UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| EDWARD TANSEY, on Behalf of Himself and All Others Similarly Situated, | ) ) ) | No. |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | |
| NAVISITE, INC., R. BROOKS BORCHERDING, JAMES W. PLUNTZE, ANDREW RUHAN, ARTHUR P. BECKER, JAMES DENNEDY, LARRY SCHWARTZ, THOMAS R. EVANS, TIME WARNER CABLE INC., and AVATAR MERGER SUB INC., | ) ) ) ) ) ) ) ) ) | SHAREHOLDER CLASS ACTION COMPLAINT BASED UPON SELF-DEALING AND BREACH OF FIDUCIARY DUTY |
| Defendants | ) ) ) | |

## SUMMARY OF THE ACTION

1.      This is a stockholder class action brought by plaintiff on behalf of holders of common stock of NaviSite, Inc. ("NaviSite" or the "Company") against NaviSite, Time Warner Cable Inc. ("Time Warner"), Avatar Merger Sub Inc. ("Avatar"), and certain of NaviSite's officers and directors.  This action arises out of the Individual Defendants' (as defined herein) agreement to sell NaviSite to Time Warner at an unfair price of $5.50 for each share of NaviSite common stock via an unfair process (the "Proposed Acquisition").  This action seeks to enjoin the Individual Defendants from further breaching their fiduciary duties in their pursuit of the Proposed Acquisition.

2.      NaviSite operates in a niche area of the massive, and rapidly growing, cloud computing industry.  Cloud computing is an increasingly popular technology that allows remote access to computing power and data over the Internet.  Cloud computing services are in much demand, driven by scorching growth in telecommunications.  Sales in the cloud computing industry are anticipated to nearly double between 2010 and 2011 and increase by 800% between 2008 and 2013.  Indeed, large technology and telecommunications companies have gone on a

cloud computing buying spree in recent months.  Comparatively, recent deals in the cloud computing industry have garnered significantly higher premiums than the purported 33% premium being offered in the Proposed Acquisition.  For example, Dell Inc. ("Dell") paid a premium of 40.86% for Compellent Technologies, Inc. ("Compellent"); Hewlett-Packard Company ("Hewlett-Packard") paid a premium of 241.97% for 3PAR Inc. ("3PAR"); and Verizon Communications Inc. ("Verizon") paid a premium of 35.23% for Terremark Worldwide, Inc. ("Terremark").

3.     Even the meager premium being offered here, however, is misleading.  As part of the Proposed Acquisition, Time Warner will acquire NaviSite's valuable net operating losses ("NOL").  The Company has $155.3 million worth of NOLs.  Time Warner expects to be able to use these NOLs for substantial tax savings.  According to a press release issued to announce the Proposed Acquisition, NaviSite's NOL will give Time Warner tax savings of approximately $40 million after closing.   When the proposed consideration is reduced by the $40 million, the Proposed Acquisition is actually a mere 7.8% premium to the Company's stock value immediately prior to the announcement of the Proposed Acquisition.

4.     Despite the Company's NOLs and enormous growth potential, the Individual Defendants agreed to the Proposed Acquisition and the inadequate consideration it entailed.  NaviSite's stock had appreciated more than 30% in the past fifty-two weeks. The Company began its great turnaround when it started selling some assets to pay off debt and tightened its focus on managed hosting and cloud computing.  However, the Board of Directors (the "Board") is attempting to sell the Company now, before its full value can be realized on the open market and while the cloud computing market is just heating up.

5.     The Board further breached its fiduciary duties by agreeing to preclusive, deal protection devices in connection with the Agreement and Plan of Merger the Company entered into on February 1, 2011 (the "Merger Agreement").  These provisions, which collectively preclude any competing offers for the Company, include: (i) a no-solicitation provision prohibiting the Company from properly shopping the Company; (ii) a termination fee payable by

the Company to Time Warner for up to $7.5 million and up to $1.5 million in reimbursement of expenses; and (iii) matching rights if the Company receives any superior proposal.

6.    Because the Individual Defendants dominate and control the business and corporate affairs of NaviSite, there exists an imbalance and disparity of economic power between them and the public shareholders of NaviSite. Therefore, it is inherently unfair for the Individual Defendants to execute and pursue any Proposed Acquisition agreement under which they will reap disproportionate benefits to the exclusion of obtaining the best shareholder value reasonably available. Nonetheless, instead of attempting to negotiate a contract reflecting the best consideration available for the NaviSite shareholders, who they are duty-bound to serve, the Individual Defendants disloyally placed their own interests first and tailored the terms and conditions of the Proposed Acquisition to meet their own personal needs and objectives. In short, the Proposed Acquisition is designed to unlawfully divest NaviSite's public shareholders of the Company's valuable assets for grossly inadequate consideration.

7.    To remedy the Individual Defendants' breaches of fiduciary duty and other misconduct, plaintiff seeks, inter alia: (i) injunctive relief preventing consummation of the Proposed Acquisition, unless and until, the Company adopts and implements a procedure or process to obtain a transaction that provides the best possible terms for shareholders; (ii) a directive to the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of NaviSite's shareholders; and (iii) rescission of, to the extent already implemented, the Merger Agreement or any of the terms thereof.

## JURISDICTION AND VENUE

8.    This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. §1332(a)(2) in that plaintiff and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

9.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

10.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) because: (i) NaviSite maintains its principal place of business in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to NaviSite, occurred in this District; and (iv) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## PARTIES

11.     Plaintiff Edward Tansey is, and has been, a shareholder of NaviSite at all relevant times. Plaintiff is a citizen of Maine.

12.     Defendant NaviSite is a Delaware corporation, operating as a provider of cloud enabled, enterprise-hosting and application management services. As one of the world's premier cloud computing providers, the Company offers a full suite of reliable and scalable managed services, including application services, industry-leading enterprise hosting, and managed cloud services. Through its global presence in the information technology space, NaviSite is able to serve approximately 1300 customers worldwide from a global platform of ten data centers. Upon completion of the Proposed Acquisition, NaviSite will become a wholly-owned subsidiary of Time Warner. NaviSite's principal executive offices are located at 400 Minuteman Road, Andover, Massachusetts.

13.     Defendant R. Brooks Borcherding ("Borcherding") is NaviSite's Chief Executive Officer ("CEO") and has been since August 2010 and President and has been since March 2010.

Borcherding was also NaviSite's Senior Vice President of Sales and Chief Revenue Officer from April 2009 to March 2010. Defendant Borcherding is a citizen of Connecticut.

14.     Defendant James W. Pluntze ("Pluntze") is NaviSite's Chief Financial Officer ("CFO") and Treasurer and has been since January 2007. Pluntze was also NaviSite's Senior Vice President of Finance from May 2005 to January 2007; acting CFO from March 2003 to May 2005; and a director from January 2003 to March 2003. Defendant Pluntze is a citizen of Massachusetts.

15.     Defendant Andrew Ruhan ("Ruhan") is NaviSite's Chairman of the Board and has been since September 2002. Defendant Ruhan is a citizen of the United Kingdom.

16.     Defendant Arthur P. Becker ("Becker") is a NaviSite director and has been since September 2002. Becker was also NaviSite's CEO from February 2003 to August 2010 and President from February 2003 to March 2010. Defendant Becker is a citizen of New York.

17.     Defendant James Dennedy ("Dennedy") is a NaviSite director and has been since January 2003. Defendant Dennedy is a citizen of Ohio.

18.     Defendant Larry Schwartz ("Schwartz") is a NaviSite director and has been since May 2003. Defendant Schwartz is a citizen of Massachusetts.

19.     Defendant Thomas R. Evans ("Evans") is a NaviSite director and has been since October 2003. Defendant Evans is a citizen of New York.

20.     Defendant Time Warner is a Delaware corporation and the second-largest cable operator in the United States, serving more than fourteen million customers, primarily located in New York, the Carolinas, Ohio, Southern California, and Texas. Time Warner's customers subscribe to one or more of its video, high-speed data, and voice services. Time Warner's principal executive offices are located at 60 Columbus Circle, New York, New York.

21.     Defendant Avatar is a Delaware corporation and wholly-owned subsidiary of Time Warner. Upon completion of the Proposed Acquisition, Avatar will merge with and into NaviSite and cease its separate existence.

22.     The defendants named above in ¶¶13-19 are sometimes collectively referred to herein as the "Individual Defendants."

## INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES

23.     Under Delaware law, the directors and officers of a publicly traded corporation have fiduciary duties of loyalty, good faith, and care to shareholders. To diligently comply with these duties, neither the directors nor the officers may take any action that:

(a)     adversely affects the value provided to the corporation's shareholders;

(b)     will discourage, inhibit, or deter alternative offers to purchase control of the corporation or its assets;

(c)     contractually prohibits themselves from complying with their fiduciary duties;

(d)     will otherwise adversely affect their duty to secure the best value reasonably available under the circumstances for the corporation's shareholders; and/or

(e)     will provide the directors and/or officers with preferential treatment at the expense of, or separate from, the public shareholders.

24.     In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of NaviSite, are obligated under Delaware law to refrain from:

(a)     participating in any transaction where the directors' or officers' loyalties are divided;

(b)     participating in any transaction where the directors or officers receive, or are entitled to receive, a personal financial benefit not equally shared by the public shareholders of the corporation; and/or

(c)     unjustly enriching themselves at the expense or to the detriment of the public shareholders.

25.     Defendants, separately and together, in connection with the Proposed Acquisition, are knowingly or recklessly violating their fiduciary duties and aiding and abetting such

breaches, including their duties of loyalty, good faith, and independence owed to plaintiff and other public shareholders of NaviSite. Certain of the defendants stand on both sides of the transaction, are engaging in self-dealing; and are obtaining for themselves personal benefits, including personal financial benefits not shared equally by plaintiff or the Class (as defined herein). Accordingly, the Proposed Acquisition will benefit the Individual Defendants in significant ways not shared with the Class members. As a result of the Individual Defendants' self-dealing and divided loyalties, neither plaintiff nor the Class will receive adequate or fair value for their NaviSite common stock in the Proposed Acquisition.

26.     Because the Individual Defendants are knowingly or recklessly breaching their duties of loyalty, good faith, and independence in connection with the Proposed Acquisition, the burden of proving the inherent or entire fairness of the Proposed Acquisition, including all aspects of its negotiation, structure, price, and terms, is placed upon defendants as a matter of law.

## THE PROPOSED ACQUISITION

27.     On February 1, 2011, NaviSite and Time Warner jointly issued the following press release announcing that the Individual Defendants had agreed to sell NaviSite to Time Warner for $5.50 in cash per NaviSite share:

Time Warner Cable to Acquire NaviSite, Inc.

Strategically Grows Its Commercial Services Customer Base and Product Portfolio with Addition of Enterprise-Class Managed Services and Cloud Computing Solutions

NEW YORK, NY and ANDOVER, MA, February 1, 2011 – Time Warner Cable Inc. and NaviSite, Inc. today announced that they have entered into an agreement under which Time Warner Cable will acquire NaviSite, a premier provider of enterprise-class hosting, managed application, messaging and cloud services, for $5.50 per share in cash, or a total equity value of approximately $230 million.

"Our commercial services business is a key growth driver for the company and one in which we continue to see great opportunity," said Glenn Britt, Chairman and CEO of Time Warner Cable. "NaviSite provides us with a successful managed services business and a new, innovative managed cloud platform representing significant new growth opportunities. We expect to build upon NaviSite's successful enterprise-class offerings, and their operational capabilities,

infrastructure and expertise to more rapidly create a robust managed services offering for small and medium sized businesses. This transaction is consistent with our capital allocation strategy – selectively investing in our business to accelerate growth while continuing to return capital to shareholders."

The acquisition provides Time Warner Cable Business Class, Time Warner Cable's commercial services business, an immediate presence in the managed services market with NaviSite's more than 1,200 customers. Following the completion of the acquisition, Time Warner Cable plans to continue the exceptional service of NaviSite's Enterprise customers and to use NaviSite's operational expertise and enterprise-class infrastructure to meet the rapidly growing demand for managed services offerings from Time Warner Cable's existing and future small and medium-sized business customers.

"On behalf of all the employees of NaviSite, we are delighted to join the Time Warner Cable family," said R. Brooks Borcherding, President and CEO of NaviSite. "Our valued customers can rest assured knowing that NaviSite and Time Warner Cable are committed to helping them grow their businesses and to delivering the reliability, innovation, and customer service they have come to expect. We also look forward to powering Time Warner Cable's development of innovative managed and cloud services for its commercial customers."

The transaction represents a 33% premium to NaviSite's Tuesday's closing price. The transaction also represents an attractive value to Time Warner Cable. The acquisition is expected to be accretive to Time Warner Cable's EPS and Free Cash Flow and will not have a material impact on leverage ratios. Time Warner Cable expects to utilize NaviSite's net operating losses, which Time Warner Cable believes will yield a net present value of approximately $40 million in tax savings after closing. The transaction is expected to close in the second calendar quarter of 2011 and is subject to NaviSite stockholder approval, expiration or early termination of the Hart-Scott-Rodino antitrust waiting period and other customary closing conditions.

NaviSite employs approximately 570 people worldwide. It operates ten data centers in the United States and the United Kingdom, including two SAS 70 Type II certified data centers, and network operations centers in Gurgaon, India and Andover, Massachusetts.

Deutsche Bank Securities Inc. and Paul, Weiss, Rifkind, Wharton & Garrison, LLP acted as advisors for Time Warner Cable. BRL Law Group LLC acted as advisor for NaviSite, and Raymond James and Richards, Layton & Finger, P.A. acted as advisors for NaviSite's Special Committee of its Board of Directors.

28.    On February 2, 2011, the Company filed a Form 8-K with the U.S. Securities and Exchange Commission ("SEC") wherein it disclosed the Merger Agreement. The announcement

and filing reveal that the Proposed Acquisition is the product of a flawed sale process and, unless the offer price is increased, would be consummated at an unfair price.

29.     Under Section 6.4 of the Merger Agreement, NaviSite is subject to a no-solicitation clause that prohibits the Company from seeking a superior offer for its shareholders. Section 6.4 states that:

> [T]he Company shall, and shall cause the Company Subsidiaries to, and shall use best efforts to cause the directors, officers and employees, consultants, agents, advisors, Affiliates and other representatives (collectively, "Representatives") of it and the Company Subsidiaries to, cease any discussions or negotiations with any Person that may be ongoing as of the date of this Agreement with respect to any Takeover Proposal. Except as permitted by this Section 6.4, from the date of this Agreement until the Effective Time or, if earlier, the termination of this Agreement in accordance with Article VIII, the Company shall not, and shall cause the Company Subsidiaries not to, and shall use best efforts to cause the Representatives of it and the Company Subsidiaries not to, directly or indirectly, (A) solicit, initiate, knowingly facilitate or knowingly encourage any inquiries regarding, or the making of any proposal or offer that constitutes, or could reasonably be expected to lead to, a Takeover Proposal, (B) engage in, continue or otherwise participate in any discussions or negotiations regarding, or furnish to any other Person information in connection with or for the purpose of encouraging or facilitating, a Takeover Proposal, (C) enter into any letter of intent, Contract or agreement in principle with respect to a Takeover Proposal, (D) approve or recommend any Takeover Proposal or any letter of intent, Contract or agreement in principle with respect to a Takeover Proposal, or (E) modify, waive, amend or release any standstill or similar provisions in any letter of intent, Contract or agreement in principle with respect to it or any Company Subsidiary, except in the case of this clause (E) if the Company Board determines in good faith (after consultation with outside counsel) that the failure to do so would be reasonably likely to be inconsistent with its fiduciary duties under applicable Law; provided, that the Company shall in all instances provide Parent with reasonable prior written notice of any decision to modify, waive, amend or release any standstill or similar provisions in any letter of intent, Contract or agreement in principle with respect to it or any Company Subsidiary (including the identity of the Person in respect of which such decision has been made).

30.     Though the Merger Agreement ostensibly has a "fiduciary out" provision that allows the Company to negotiate with other bidders, this provision is actually illusory. In order for NaviSite to negotiate with any other suitors, the potential acquirer would first have to make an unsolicited superior offer. Without access to non-public information, which the Company is prevented from offering under the Merger Agreement prior to the receipt of an offer that the

Company reasonably expects to lead to a superior deal, no other bidder will emerge to make such an offer.

31.     Furthermore, NaviSite is subject to another preclusive lock-up provision in Section 8.3 of the Merger Agreement.  Section 8.3 states that NaviSite is subject to a termination fee of at least $7.5 million.  In certain circumstances, the Company may also be required to reimburse Time Warner's expenses up to $1.5 million in addition to paying the termination fee. This provision is unfair to the Company's shareholders and contrary to their interests because it deters and prevents the submission of higher proposals, especially in connection with the no-solicitation clause in Section 6.4.  The following table illustrates how excessive the termination fee is based on both a percentage of the Proposed Acquisition's equity value and the additional per share cost that would be thrust on any competing bidder:

|  | Termination Fee | Termination Fee Plus Max Expenses |
| --- | --- | --- |
| Termination Fee | $7,500,000 | $9,000,000 |
| Fee Per Share | $0.20 | $0.24 |
| Fee as % of Total Equity Value | 3.57% | 4.28% |

32.     The provisions above, which will serve to unreasonably deter and discourage superior offers from other interested parties, were agreed to by the Individual Defendants to help secure the personal benefits and unfair profits afforded to them through the Proposed Acquisition.

### DEFENDANTS FAILED TO MAXIMIZE SHAREHOLDER VALUE

33.     As a result of defendants' conduct, NaviSite's public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company.  The consideration reflected in the Merger Agreement does not reflect the true inherent value of the Company that was available only to the Individual Defendants, as directors and officers of NaviSite, and Time Warner at the time the Proposed Acquisition was announced.  Indeed, the Individual Defendants ensured that NaviSite would be

sold to one buyer and one buyer only by negotiating a no-solicitation clause that prevents NaviSite from soliciting higher offers and agreeing to the preclusive termination fee.

34.     The consideration of $5.50 per NaviSite share offered in the Proposed Acquisition is grossly inadequate.  This consideration represents a mere 33% premium to the price at which NaviSite's stock was trading prior to the announcement of the Proposed Acquisition and a mere 7% if you factor in the tax savings related to NaviSite's NOL.  Comparable transactions have garnered significantly higher premiums.  For example:

(a)     On September 2, 2010, after a bidding war with Dell, Hewlett-Packard acquired 3PAR for a premium of more than 241% from the stock's trading price prior to the announcement that 3PAR was selling itself;

(b)     On December 13, 2010, Dell announced it was acquiring Compellent for a premium of 40.86% more than Compellent's closing price prior to speculation about an acquisition; and

(c)     On January 27, 2011, Verizon announced it was acquiring Terremark for a premium of 35.23%.

## SELF-DEALING

35.     By reason of their positions with NaviSite, the Individual Defendants have access to non-public information concerning the financial condition and prospects of NaviSite.  Thus, there exists an imbalance and disparity of knowledge and economic power between the Individual Defendants and the public shareholders of NaviSite.  Therefore, it is inherently unfair for the Individual Defendants to execute and pursue any Proposed Acquisition agreement under which they will reap disproportionate benefits to the exclusion of obtaining the best value for shareholders.  Instead, the Individual Defendants disloyally placed their own interests first, and tailored the terms and conditions of the Proposed Acquisition to meet their own personal needs and objectives.  Certain Individual Defendants are also receiving lucrative change-in-control benefits or prestigious positions at the post-Proposed Acquisition company.

36.     The Proposed Acquisition is wrongful, unfair, and harmful to NaviSite's public stockholders, and represents an effort by the Individual Defendants to aggrandize their own financial position and interests at the expense of and to the detriment of the Class members. Specifically, defendants are attempting to deny plaintiff and the Class their shareholder rights through the sale of NaviSite via an unfair process. Accordingly, the Proposed Acquisition will benefit the Individual Defendants at the expense of NaviSite's shareholders.

### THE UNFAIR AND INADEQUATE PROCESS

37.     In order to meet their fiduciary duties, the Individual Defendants are obligated to explore transactions that will maximize shareholder value, and not structure a preferential deal for themselves. Due to the Individual Defendants' eagerness to enter into a transaction with Time Warner, they failed to implement a process to obtain the maximum price for NaviSite shareholders.

38.     As a result of defendants' conduct, NaviSite's public stockholders have been and will continue to be denied the fair process and arm's-length negotiated terms to which they are entitled in a sale of their Company. The consideration reflected in the Merger Agreement does not reflect the true inherent value of the Company that was known only to the Individual Defendants, as trustees and officers of NaviSite, and Time Warner at the time the Proposed Merger was announced. Indeed, Individual Defendants ensured that NaviSite would be sold to one buyer and one buyer only by negotiating a no-solicitation clause that prevents NaviSite from soliciting higher offers, reimbursement of up to $1.5 million in expenses, and a $7.5 million termination fee that will discourage any unsolicited offers.

39.     In light of the foregoing, the Individual Defendants must, as their fiduciary obligations require:

> Withdraw their consent to TimeWarner's acquisition of NaviSite and allow the shares to trade freely - without impediments, including the no solicitation provision and the termination fee;

> Act independently so that the interests of NaviSite's public stockholders will be protected;

Adequately ensure that no conflicts of interest exist between defendants' own interests and their fiduciary obligation to maximize stockholder value or, if such conflicts exist, to ensure that all conflicts be resolved in the best interests of NaviSite's public stockholders; and

Solicit competing bids to TimeWarner's offer to ensure that the Company's shareholders are receiving the maximum value for their shares.

The Individual Defendants have also approved the Proposed Acquisition so that it transfers 100% of NaviSite's revenues and profits to Time Warner, thus, all of NaviSite's operations will now accrue to the benefit of Time Warner.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action for himself and on behalf of all holders of NaviSite common stock which have been or will be harmed by the conduct described herein (the "Class"). Excluded from the Class are the defendants and any individual or entity affiliated with any defendant.

41.     This action is properly maintainable as a class action.

42.     The Class is so numerous that joinder of all members is impracticable. According to NaviSite's SEC filings, there were more than over 38 million shares of NaviSite's common stock outstanding as of January 31, 2011.

43.     There are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member.  The common questions include, inter alia, the following:

(a)     whether the Individual Defendants have breached their fiduciary duties of undivided loyalty, independence, or due care with respect to plaintiff and the other members of the Class in connection with the Proposed Acquisition;

(b)     whether the Individual Defendants are engaging in self-dealing in connection with the Proposed Acquisition;

(c)     whether the Individual Defendants have breached any of their other fiduciary duties owed to plaintiff and the other members of the Class in connection with the Proposed Acquisition, including the duties of good faith, diligence, and fair dealing;

(d)     whether NaviSite aided and abetted the Individual Defendants' breaches of fiduciary duties;

(e)     whether Time Warner and Avatar aided and abetted the Individual Defendants' breaches of fiduciary duties; and

(f)     whether plaintiff and the other members of the Class would suffer irreparable injury were the transactions complained of herein consummated.

44.     Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff does not have any interests adverse to the Class.

45.     Plaintiff has retained competent counsel experienced in litigation of this nature and will fairly and adequately represent and protect the interests of the Class.

46.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class which would establish incompatible standards of conduct for the party opposing the Class.

47.     Plaintiff anticipates that there will be no difficulty in the management of this litigation.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

48.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

### Claim for Breach of Fiduciary Duties Against the Individual Defendants

49.     Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

50.     The Individual Defendants have violated the fiduciary duties of care, loyalty, good faith, and independence owed to the public shareholders of NaviSite and have acted to put their personal interests ahead of the interests of NaviSite's shareholders.

51.     By the acts, transactions, and courses of conduct alleged herein, defendants,

- 14 -

individually and acting as a part of a common plan, are attempting to unfairly deprive plaintiff and other members of the Class of the true value inherent in and arising from NaviSite.

52.     The Individual Defendants have violated their fiduciary duties by entering NaviSite into the Proposed Acquisition without regard to the effect of the Proposed Acquisition on NaviSite's shareholders.

53.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, and independence owed to the shareholders of NaviSite because, among other reasons:

(a)     they failed to take steps to maximize the value of NaviSite to its public shareholders;

(b)     they failed to properly value NaviSite and its various assets and operations; and

(c)     they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interrelationships or connection with the Proposed Acquisition.

54.     Because the Individual Defendants dominate and control the business and corporate affairs of NaviSite, and are in possession of or have access to private corporate information concerning NaviSite's assets, business, and future prospects, there exists an imbalance and disparity of knowledge and economic power between them and the public shareholders of NaviSite which makes it inherently unfair for them to pursue and recommend any proposed transaction wherein they will reap disproportionate benefits to the exclusion of maximizing shareholder value.

55.     By reason of the foregoing acts, practices, and course of conduct, the Individual Defendants have failed to exercise ordinary care and diligence in the exercise of their fiduciary obligations toward plaintiff and the other members of the Class.

56.     The Individual Defendants are engaging in self-dealing, are not acting in good faith toward plaintiff and the other members of the Class, and have breached and are breaching their fiduciary duties to the members of the Class.

- 15 -

57.     As a result of the Individual Defendants' unlawful actions, plaintiff and the other members of the Class will be irreparably harmed in that they will not receive their fair portion of the value of NaviSite's assets and operations. Unless the Proposed Acquisition is enjoined by the Court, the Individual Defendants will continue to breach their fiduciary duties owed to plaintiff and the members of the Class, will not engage in arm's-length negotiations on the Proposed Acquisition terms, and may consummate the Proposed Acquisition, all to the irreparable harm of the members of the Class.

58.     Plaintiff and the members of the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can plaintiff and the Class be fully protected from the immediate and irreparable injury which defendants' actions threaten to inflict.

## COUNT II

### Claim for Aiding and Abetting Breaches of Fiduciary Duty Against NaviSite

59.     Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

60.     The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

61.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

62.     NaviSite colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and was an active and knowing participant in the Individual Defendants' and breaches of fiduciary duties owed to plaintiff and the members of the Class.

63.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

## COUNT III

### Claim for Aiding and Abetting Breaches of Fiduciary Duty Against
### Time Warner and Avatar

64.     Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

65.     The Individual Defendants owed to plaintiff and the members of the Class certain fiduciary duties as fully set out herein.

66.     By committing the acts alleged herein, the Individual Defendants breached their fiduciary duties owed to plaintiff and the members of the Class.

67.     Defendants Time Warner and Avatar colluded in or aided and abetted the Individual Defendants' breaches of fiduciary duties, and were active and knowing participants in the Individual Defendants' breaches of fiduciary duties owed to plaintiff and the members of the Class.

68.     Defendants Time Warner and Avatar participated in the breach of the fiduciary duties by the Individual Defendants for the purpose of advancing their own interests.  Defendants Time Warner and Avatar obtained and will obtain both direct and indirect benefits from colluding in or aiding and abetting the Individual Defendants' breaches.  Defendants Time Warner and Avatar will benefit, inter alia, from the acquisition of the Company at an inadequate and unfair price if the Proposed Acquisition is consummated.

69.     Plaintiff and the members of the Class shall be irreparably injured as a direct and proximate result of the aforementioned acts.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands injunctive relief, in his favor and in favor of the Class and against defendants as follows:

A.      Declaring that this action is properly maintainable as a class action;

B.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

C.      Rescinding, to the extent already implemented, the Merger Agreement;

- 17 -

D.      Enjoining defendants, their agents, counsel, employees, and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process reasonably designed to provide the best possible value for shareholders;

E.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for NaviSite;

F.      Imposition of a constructive trust, in favor of plaintiff and members of the Class, upon any benefits improperly received by defendants as a result of their wrongful conduct;

G.      Awarding plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

H.      Granting such other and further equitable relief as this Court may deem just and proper.

Dated: February 8, 2011

PARTRIDGE, ANKNER, &
    HORSTMANN, LLP
TERENCE K. ANKNER

TERENCE K. ANKNER

BBO No. 556377
The Berkeley Building
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone: (617) 859-9999
Facsimile: (617) 859-9998

ROBBINS UMEDA LLP
MARC M. UMEDA
STEPHEN J. ODDO
ARSHAN AMIRI
JUSTIN D. RIEGER
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile : (619) 525-3991

Attorneys for Plaintiff

576231