**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| EDWARD TANSEY, on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>NAVISITE, INC., R. BROOKS BORCHERDING, JAMES W. PLUNTZE, ANDREW RUHAN, ARTHUR P. BECKER, JAMES DENNEDY, LARRY SCHWARTZ, THOMAS R. EVANS, TIME WARNER CABLE INC., and AVATAR MERGER SUB INC.,<br><br>Defendants. | ) | C.A. No. 11-CV-10214-RWZ |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**

## TABLE OF CONTENTS

**Page(s)**


I. INTRODUCTION ........ 1

II. FACTUAL AND PROCEDURAL BACKGROUND ........ 3

A. Background of the Litigation ........ 3

B. Preliminary Approval and Notice ........ 5

III. TERMS AND BENEFITS OF THE PROPOSED SETTLEMENT ........ 6

A. The Sales Process Leading to the Merger ........ 7

B. Certain of the Company's Financial Projections for Fiscal Years 2011-2015 ........ 7

C. Raymond James's Valuation Analyses ........ 8

IV. THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS ........ 9

V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED ........ 10

A. The Settlement Is the Product of Arm's-Length Negotiations ........ 10

B. The Complexity, Expense, and Likely Duration of Further Litigation Weigh in Favor of Settlement ........ 10

C. The Stage of the Proceedings, Including the Status of Discovery ........ 11

D. The Factual and Legal Obstacles that Could Prevent Plaintiff from Prevailing on the Merits ........ 12

E. The Possible Range of Recovery and the Certainty of Damages Is Outweighed by the Immediate Value of the Disclosure Benefits ........ 13

F. The Opinions of Plaintiff's Counsel and Absent Members of the Settlement Class Support Approval ........ 14

VI. CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT IS PROPER ........ 15

A. The Proposed Class Satisfies the Prerequisites of Federal Rule of Civil Procedure 23 ........ 15

1. An Ascertainable Class Exists and Is So Numerous that Joinder Is Impracticable ........ 15

2. Common Questions of Law and Fact Exist and Predominate .................. 16

3. Plaintiff's Claims Are Typical of the Class' Claims ................................ 16

4. Plaintiff Will Fairly and Adequately Represent the Class........................ 17

B. Certification of a Non-Opt-Out Class Is Appropriate Pursuant to Federal Rule of Civil Procedure 23 ....................................................................... 17

VII. THE NEGOTIATED ATTORNEYS' FEES AND EXPENSES ARE FAIR AND REASONABLE AND SHOULD BE APPROVED........................................................ 18

A. Negotiated Attorneys' Fees Are Favored by Courts ............................................ 18

B. The Substantial Benefits Conferred on the Settlement Class Strongly Support the Fee Amount........................................................................... 19

C. Attorneys' Fees in Similar Cases Support the Fee Amount.................................. 20

VIII. CONCLUSION ........................................................................................................ 20

**TABLE OF CONTENTS**

**Page(s)**

**CASES**

*Arnold* v. *Soc'y for Sav. Bancorp*,
650 A.2d 1270 (Del. 1994)........................................7, 13

*Aronson v. Lewis*,
473 A.2d 805 (Del. 1984)........................................12

*Augenbaum v. Forman*,
No. 1569-N, 2006 WL 1716916 (Del. Ch. June 21, 2006) ........................................14, 20

*Benihana of Tokyo, Inc. v. Benihana, Inc.*,
906 A.2d 114 (Del. 2006)........................................12

*Brehm v. Eisner*,
746 A.2d 244 (Del. 2000)........................................12

*Bussie v. Allmerica Fin. Corp*.,
50 F. Supp. 2d 59 (D. Mass. 1999)........................................10, 14

*City P'ship Co. v. Atl. Acquisition Ltd. P'ship*,
100 F.3d 1041 (lst Cir. 1996) ........................................9

*Durrett v. Providence Hous. Auth.*,
896 F.2d 600 (1st Cir. 1990) ........................................9

*Hall v. Cole*,
412 U.S. 1 (1973) ........................................19

*In re AXA Fin., Inc. S'holders Litig.*,
No. 18268, 2002 WL 1283674 (Del. Ch. May 22, 2002)........................................19

*In re Countrywide S'holders Litig.*,
No. 3464-VCN, 2009 WL 2902476 (Del. Ch. Aug. 28, 2009) ........................................14, 20

*In re Golden State Bancorp S'holders Litig.*,
No. 16175, 2000 WL 62964 (Del. Ch. Jan. 7, 2000)........................................14, 20

*In re Lupron Mktg. & Sales Practices Litig.*,
228 F.R.D. 75 (D. Mass. 2005) ........................................10

*In re Nat'l City Corp. S'holders Litig.*,
No. 4123-CC, 2009 WL 2425389 (Del. Ch. July 31, 2009)........................................14, 20

*In re NetSmart Techs., Inc. S'holders Litig.*,
924 A.2d 171 (Del. Ch. 2007) ....................7

*In re Relafen Antitrust Litig.*,
231 F.R.D. 52 (D. Mass. 2005) ....................15

*In re Talley Indus., Inc. S'holders Litig.*,
No. 15961, 1998 WL 191939 (Del. Ch. Apr. 13, 1998)....................13, 20

*In re. Wm. Wrigley Jr. Co. S'holders Litig.*,
No. 3750-VCL, 2009 WL 154380 (Del. Ch. Jan. 22, 2009) ....................18

*Laidlaw Acquisition Corp. v. Mayflower Group, Inc.*,
636 F. Supp. 1513 (S.D. Ind. 1986)....................12

*M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*,
671 F. Supp. 819 (D. Mass. 1987)....................9, 18

*Malone v. Brincat,*
722 A.2d 5 (Del. 1998)....................7

*Med. Imaging Ctrs. of Am.*, *Inc. v. Lichtenstein*,
917 F. Supp. 717 (S.D. Cal. 1996) ....................12

*Mills v. Elec. Auto-Lite Co.*,
396 U.S. 375 (1970) ....................14, 19

*Stroud v. Grace*,
606 A.2d 75 (Del. 1992)....................13

*Tandycrafts, Inc. v. Initio Partners*,
562 A.2d 1162 (Del. 1989)....................14, 19

*TSC Indus. v. Northway, Inc.*,
426 U.S. 438 (1976) ....................13, 19

*Zirn v. VLI Corp.*,
621 A.2d 773 (Del. 1993)....................13

**OTHER AUTHORITIES**

1 Alba Conte & Herbert B. Newberg,
*Newberg on Class Action*
§3:5 (4th ed. 2002) ....................16

**RULES**

Fed. R. Civ. P.
Rule 23....................15

Rule 23(a) ....... 16
Rule 23(a)(1) ....... 16
Rule 23(a)(2) ....... 16
Rule 23(a)(3) ....... 16
Rule 23(a)(4) ....... 17
Rule 23(b) ....... 16, 18
Rule 23(b)(2) ....... 18
Rule 23(b)(3) ....... 16

Mass. Local
Rule 16.4(a) ....... 9

## I. INTRODUCTION

Plaintiff[1] Edward Tansey hereby moves unopposed for final approval of the proposed settlement (the "Settlement") and requests entry of the proposed Order and Final Judgment submitted herewith. The Settlement resolves the class claims alleged in the above-captioned action (the "Action"), as well as the claims alleged in an action pending in the Business Litigation Session of the Superior Court for the Commonwealth of Massachusetts in Suffolk County captioned *Chain v. Ruhan, et al.*, Civ. A. No. 11-0514-BLS (the "State Action" and collectively with the Action, the "Actions"). Plaintiff has obtained a beneficial result on behalf of the former holders of NaviSite, Inc. ("NaviSite" or the "Company") common stock in the form of supplemental disclosures contained in a definitive proxy statement ("Definitive Proxy") filed with the U.S. Securities and Exchange Commission ("SEC") on March 23, 2011, and related to the merger between NaviSite and Avatar Merger Sub Inc. ("Avatar"), a wholly owned subsidiary of Time Warner Cable Inc. ("TWC") (the "Merger").

Plaintiff's Counsel[2] believe that the Settlement is a highly favorable result for this complex litigation, and that the benefits that would have been sought by any injunction were in fact achieved through the disclosure of previously omitted material information concerning the Merger which was demanded by Plaintiff and which Defendants[3] disclosed in the Definitive Proxy. *See* Affidavit of Stephen J. Oddo in Support of Plaintiff's Unopposed Motion for Final Approval of Settlement ("Oddo Aff." or "Oddo Affidavit"), ¶7. Indeed, one of the principal objectives of the Action was to ensure that NaviSite's public shareholders were given enough

---

[1] All capitalized terms that are not otherwise defined shall have the same definitions as set forth in the Stipulation of Settlement, dated and filed with the Court, June 9, 2011 ("Stipulation") (Docket Not. 25).

[2] Plaintiff and Robert Chain, the plaintiff in the State Action, are collectively referred to herein as "Plaintiff."

[3] The term "Defendants" refers to R. Brooks Borcherding, James W. Pluntze, Andrew Ruhan, Arthur P. Becker, James Dennedy, Larry Schwartz, Thomas R. Evans (collectively, the "Individual Defendants"), NaviSite, TWC, and Avatar.

information to cast a fully informed vote on the Merger. *Id.*, ¶¶4, 7. Given the short period of time between the announcement of the Merger Agreement and the shareholder vote on the Merger, Plaintiff's efforts to obtain the disclosures were, by necessity, performed on an expedited basis. *Id.*, ¶6. The Settlement is the result of these efforts, and its terms directly address Plaintiff's claims for injunctive relief concerning Defendants' failure to disclose material information in connection with the Merger. *Id.*, ¶9.

As demonstrated herein and in the Oddo Affidavit, Plaintiff's Counsel expended a substantial effort over a necessarily short period of time in reaching the Settlement on the terms and conditions set forth in the Stipulation. *Id.*, ¶5. Plaintiff's Counsel, among other things, conducted an extensive investigation into Defendants' conduct in connection with, and leading up to, the execution of the Merger Agreement by, among other things, reviewing and analyzing all relevant SEC filings, press releases, and analyst reports pertaining to NaviSite, TWC, and the Merger generally; filed the initial complaint; filed an amended complaint; prepared and sent a letter to the NaviSite Board of Directors (the "Board") demanding that it fully disclose certain additional material information concerning the Merger to the Company's shareholders prior to the shareholder vote on whether to approve the Merger Agreement; obtained and reviewed non-public documents from Defendants; and retained a financial consultant for purposes of evaluating the Merger and the disclosures made to shareholders concerning the Merger. *Id.*, ¶4.

As a result of those efforts, Plaintiff's Counsel were able to secure additional material disclosures for NaviSite shareholders that Plaintiff believes enabled them to cast a fully informed vote on the Merger. *Id.*, ¶18, 28. It is a deep-seated precept of the securities laws that shareholders are entitled to be fully informed of all material facts pertaining to transactions that require their approval. The Supplemental Disclosures included material information concerning the background and principal events leading up to the execution of the Merger Agreement, the financial analyses presented by the Company's financial advisor, Raymond James & Associates, Inc. ("Raymond James"), to the Special Committee of the Board, and the financial projections provided to Raymond James by the Company's Board. *Id.*, ¶7. Absent the Supplemental

Disclosures, Plaintiff believes that NaviSite's shareholders would not have had all the information necessary to make a fully-informed vote as to whether they should approve the Merger Agreement. *Id.*, ¶¶18, 28.

Plaintiff's Counsel, who are well-respected and experienced in prosecuting shareholder class actions, have concluded that the Settlement achieves all of the goals of the Action and, therefore, is the best possible result for members of the Settlement Class. *Id.*, ¶8. Thus, the proposed Settlement is fair, reasonable, and adequate and should be finally approved.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Background of the Litigation

On February 1, 2011, NaviSite and TWC issued a joint press release announcing the execution of the Merger Agreement and the Merger contemplated therein. *Id.* ¶11. On February 8, 2011, Plaintiff filed his initial putative class action complaint on behalf of himself and all similarly situated NaviSite shareholders. *Id.* The complaint alleged that the $5.50 per share being offered by TWC to NaviSite's shareholders as consideration in the Merger was inadequate and the process by which NaviSite considered the Merger was flawed. *Id.* Accordingly, the complaint sought, among other things, an order enjoining the Merger and rescinding any transactions contemplated by the Merger Agreement that may have been consummated. *Id.* On February 9, 2011, another NaviSite stockholder, Robert Chain, filed an initial complaint in the State Action alleging similar claims as Plaintiff.[4] *Id.*

On March 1, 2011, NaviSite filed with the SEC a preliminary proxy statement in connection with the Merger (the "Preliminary Proxy"). *Id.*, ¶12.

On March 8 and 9, 2011, Plaintiffs amended their respective complaints so as to add allegations that the Preliminary Proxy contained materially inadequate disclosures and material

---

[4] Pursuant to the Stipulation, the State Action will be dismissed after the Court approves this Settlement. *See* Stipulation, ¶9.9.

omissions which constituted a further breach of the Defendants' fiduciary duties to the Company's shareholders. *Id.*, ¶13.

Following the drafting of his amended complaint, on March 11, 2011, Plaintiff, through his counsel, served on counsel for the Company and the Individual Defendants a letter outlining certain alleged disclosure omissions and/or misrepresentations in the Preliminary Proxy and proposing certain terms and conditions under which he would consider an offer to settle (the "Settlement Demand"). *Id.*, ¶14. Plaintiff also requested the production of Raymond James's presentation to the Board in connection with its fairness opinion. *Id.*

On March 15, 2011, Plaintiff's Counsel received a document production from Defendants' Counsel which included, among other documents, the Raymond James's presentation. *Id.*, ¶15. Plaintiff's Counsel retained a financial consultant for purposes of reviewing the documents produced by Defendants, evaluating the Merger Agreement and the disclosures made in the Preliminary Proxy, and providing financial advice with respect to the Merger as a whole. *Id.*, ¶16.

Thereafter, the Parties and their respective counsel engaged in arm's-length negotiations concerning the terms and conditions of a potential resolution of the Actions. *Id.*, ¶17. In connection with such negotiations, Plaintiff's Counsel expressed the view to Defendants' Counsel that particularized supplemental disclosures were necessary and should be included in the Definitive Proxy. *Id.*, ¶17. Ultimately, the Parties reached an agreement-in-principle, subject to confirmatory discovery, to resolve the Actions on the basis that Defendants file the Supplemental Disclosures with the SEC and disseminate them to NaviSite's shareholders in advance of the shareholder vote on the Merger. *Id.* On March 23, 2011, the parties entered into a Memorandum of Understanding ("MOU") to document their agreement in principle, subject to additional discovery, to settle the Actions. *Id.*

As a direct result of the pendency and prosecution of the Actions, Defendants agreed to make the Supplemental Disclosures identified as being omitted from the Preliminary Proxy. *Id.*, ¶28; Stipulation at 6, 13. On March 23, 2011, NaviSite filed with the SEC the Definitive Proxy

containing the Supplemental Disclosures concerning the Merger and caused the Definitive Proxy to be mailed to NaviSite's shareholders. *Id.*, ¶19. Specifically, Defendants provided shareholders of the Company with, among other things, additional material information concerning the sales process leading up to the Merger, management's projections for fiscal years 2011-2015, and Raymond James's valuation analyses. Oddo Aff., ¶29-33; Stipulation, Ex. A. On April 20, 2011, NaviSite's shareholders voted in favor of the Merger Agreement and Merger, which was thereafter consummated on April 21, 2011. *Id.*

After the substantive terms of the proposed Settlement were agreed to, the Parties negotiated an appropriate amount for attorneys' fees and expenses for counsel for Plaintiffs. *Id.*, ¶25. As a result of these discussions, NaviSite agreed to pay $360,000 in attorneys' fees and expenses (the "Fee Amount"). *Id.*; Stipulation, ¶12.

Plaintiff's Counsel has conducted confirmatory discovery to confirm that the terms of the Merger Agreement and the proposed Settlement are fair, reasonable, and adequate. Oddo Aff., ¶26. As part of this process, Defendants produced certain non-public documents to Plaintiff, including the minutes of NaviSite's Board and Special Committee meetings between July 13, 2010, and February 1, 2011, and the Raymond James presentations. *Id.* In addition, Plaintiff's Counsel personally interviewed Bob Lockwood, Managing Director of Raymond James and Larry Schwartz, Chair, Special Committee of the Board. *Id.*, ¶26. In evaluating the entirety of the information gathered during their initial investigation, the litigation of this Action, the review of documents obtained from Defendants during litigation and settlement discussions, and the confirmatory discovery process, Plaintiff and Plaintiff's Counsel have concluded that the proposed Settlement is fair, reasonable, and adequate. *Id.*, ¶27.

### B. Preliminary Approval and Notice

On June 10, 2011, the Court granted the Parties' Joint Motion for Preliminary Approval of Settlement and directed that the approved notice ("Notice") be mailed to potential members of the Settlement Class. *See* Scheduling Order on Approval of Class Action Settlement and Class Certification ("Preliminary Approval Order") (Docket No. 27), ¶5. Pursuant to the Preliminary

Approval Order, Notice was mailed to all persons of record who held NaviSite common stock at any time during the period from July 12, 2010, through and including April 21, 2011, the effective date of consummation of the Merger, as set forth in the books and records maintained by or on behalf of NaviSite, at their respective addresses set forth in such records. *See* Affidavit of Mailing (Docket No. 29), ¶¶ 2-3.

As of the date of this filing, Plaintiff's Counsel is not aware of any objections to the Settlement. Oddo Aff., ¶23. Plaintiff submits that the fact that no NaviSite shareholders submitted written objections to the Court is convincing evidence of the proposed Settlement's fairness and adequacy, particularly given the comprehensive notice provided to NaviSite shareholders. *Id.*

## III. TERMS AND BENEFITS OF THE PROPOSED SETTLEMENT

This litigation provided substantial benefits to the Settlement Class. *Id.*, ¶28. As a direct result of Plaintiff's Counsel's pursuit of this matter, Defendants provided NaviSite shareholders with the Supplemental Disclosures prior to the shareholder vote date on the Merger thus ensuring that they were able to make a fully-informed decision as to whether they should approve the Merger Agreement. *See* Stipulation, Ex. A. Defendants have acknowledged that the filing, pendency, and prosecution of the Action was the cause of the dissemination of the Supplemental Disclosures. *See id.* at 6, 13.

The Supplemental Disclosures included additional material information concerning (i) the sales process and negotiations leading up to the execution of the Merger Agreement; (ii) certain financial projections prepared by NaviSite management for fiscal years 2011-2015 (including change in working capital and capital expenditure amounts) that were provided to Raymond James for purposes of its analyses; (iii) the analyses supporting the fairness opinion presented by Raymond James to the Board regarding the Merger, including (a) the method by which companies were selected for purposes of Raymond James's Selected Public Companies Analysis; (b) the method by which transactions were selected for purposes of Raymond James's Selected Transaction Analysis and the manner in which the analysis was actually performed; (c)

the manner in which Raymond James's Transaction Premium Analysis was performed and the summary statistics that were used; and (d) the means by which Raymond James calculated the Company's unlevered free cash flows for purposes of its Discounted Cash Flow ("DCF") Analysis and the rationale for choosing the 16.0% - 20.0% discount rates used therein; (iv) the compensation Raymond James had received from the Company since 2008; and (v) the effect that payment of the preferred stock merger consideration would have on the payment of the common stock merger consideration.

### A. The Sales Process Leading to the Merger

In the Supplemental Disclosures, Defendants disclosed certain information concerning the sales process leading to the Merger. Specifically, Defendants disclosed additional information concerning Raymond James's contacts with certain interest acquirers of the Company and Atlantic Investors, Inc.'s role in the bidding process following the rejection of its July 12, 2010 offer of $3.05 per Company share. All of this additional information was material to NaviSite shareholders because it provided them with a basis to evaluate the actions taken by the Board to maximize shareholder value. This is consistent with the edict in Delaware law that "[w]hen directors describe their decision-making process leading up to a merger, they must do so in a fair and balanced way." *In re NetSmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 209 n.120 (Del. Ch. 2007); *see also Malone v. Brincat,* 722 A.2d 5, 12 (Del. 1998); *Arnold* v. *Soc'y for Sav. Bancorp*, 650 A.2d 1270, 1280-82 (Del. 1994).

### B. Certain of the Company's Financial Projections for Fiscal Years 2011-2015

In the Supplemental Disclosures, Defendants disclosed NaviSite management's projections of the Company's "change in working capital" and "capital expenditures" for fiscal years 2011-2015 as provided to Raymond James. As the Delaware Chancery Court recently held in *NetSmart*, 924 A.2d at 201-03, the disclosure of financial information regarding the Company is material because it: (i) provides shareholders with a basis to better project the future financial performance of the Company in making their voting decision; and (ii) helps shareholders to

better understand the financial analyses provided by the Company's financial advisor in its fairness opinion. Indeed, as Vice Chancellor Strine noted in *NetSmart*:

> [P]rojections of this sort are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or (as already discussed) market multiples. What they cannot hope to do is replicate management's insider view of the company's prospects.

*Id.* at 203. Because Raymond James had access to these projections when preparing its financial analyses of the Company, the disclosure of this information was further material because it permitted NaviSite's public shareholders to more accurately determine what, if any, weight to place upon Raymond James's fairness opinion in making their voting decision in connection with the Merger.

### C. Raymond James's Valuation Analyses

The Supplemental Disclosures also included additional information concerning Raymond James's valuation analyses. Specifically, Defendants included previously omitted information concerning (i) Raymond James's selection criteria for the companies and transactions used in its Selected Public Companies Analysis and its Selected Transaction Analysis; (ii) the means by which Raymond James's Selected Transaction Analysis was performed; (iii) the manner in which Raymond James's Transaction Premium Analysis was performed and the summary statistics that were used; and (iv) the means by which Raymond James calculated the Company's unlevered free cash flows for purposes of its DCF Analysis and the rationale for choosing the 16.0% - 20.0% discount rates used therein.

The disclosure of this additional information was material because it enabled NaviSite shareholders to better understand the financial analyses provided by Raymond James to more accurately determine what, if any, weight to place upon Raymond James's fairness opinion in making their voting decision in connection with the Merger. As Vice Chancellor Strine stated in *NetSmart*:

> [W]hen a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the

> key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Only providing some of that information is insufficient to fulfill the duty of providing a 'fair summary of the substantive work performed by the investment bankers upon whose advice the recommendations of the [] board as to how to vote ....

*Id*. at 203-04 (citation and footnote omitted). Here, the preliminary proxy omitted some of the more critical data and inputs. The Supplemental Disclosures provided the omitted information, which enabled shareholders to make their own assessment of what weight, if any, to place on the fairness opinion in determining whether they believed the Merger consideration adequately valued their holdings in the Company. Thus, the information regarding Raymond James's valuation analyses was material.

## IV. THE STANDARDS FOR JUDICIAL APPROVAL OF CLASS ACTION SETTLEMENTS

A matter brought as a class action may be settled, voluntarily dismissed, or compromised only with the court's approval. Fed. R. Civ. P. 23(e). Courts consistently recognize "the clear policy in favor of encouraging settlements." *Durrett v. Providence Hous. Auth.*, 896 F.2d 600, 604 (1st Cir. 1990) (reversing denial of approval of class action settlement as abuse of discretion). Where, as here, the parties have conducted sufficient discovery and the settlement is the product of arm's-length negotiations, "there is a presumption in favor of the settlement." *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1043 (lst Cir. 1996); *see also M. Berenson Co. v. Faneuil Hall Marketplace, Inc.*, 671 F. Supp. 819, 822 (D. Mass. 1987) ("a proposed class settlement ... reached after meaningful discovery, after arm's length negotiation, conducted by capable counsel ... is presumptively fair").[5]

Having granted preliminary approval of the proposed Settlement and directed Notice be provided to class members, the Court must now decide whether the Settlement should be approved as fair, reasonable, and adequate. In making this determination, courts consider several

---

[5] Indeed, the local rules favor settlement over continued prolonged litigation. See D. Mass. Local Rule 16.4(a) ("The judicial officer shall encourage the resolution of disputes by settlement or other alternative dispute resolution programs.").

factors, including (i) the complexity, expense, and likely duration of the litigation; (ii) the stage of the proceeding and the amount of discovery completed; (iii) whether negotiations were conducted at arm's-length; (iv) the reaction of the class to the settlement; and (v) the recommendation of experienced counsel. *See, e.g.*, *In re Lupron Mktg. & Sales Practices Litig.*, 228 F.R.D. 75, 93-94 (D. Mass. 2005); *Bussie v. Allmerica Fin. Corp.*, 50 F. Supp. 2d 59, 72-78 (D. Mass. 1999). The list of factors is not exclusive, and the court is free to engage in a balancing and weighing of factors depending on the circumstances of each case. As discussed below, each factor weighs in favor of the Settlement.

## V. THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE AND SHOULD BE APPROVED

### A. The Settlement Is the Product of Arm's-Length Negotiations

In evaluating a settlement, one factor considered by the courts is whether the settlement was a product of fraud or collusion. There has been no fraud or collusion in these actions. Both the litigation and the negotiations surrounding the Stipulation were hotly contested. *See* Oddo Aff., ¶34. The Settlement was produced by arm's-length bargaining by sophisticated parties in a context where there were numerous disputed issues of fact and law. *Id.* The negotiations were both intensive and hard fought. *Id.* Once an agreement-in-principle was reached, the Stipulation itself went through several revisions until final agreement was attained. Under such circumstances, the Court can conclude that the settlement is not the product of fraud or collusion, and should rightly be approved.

### B. The Complexity, Expense, and Likely Duration of Further Litigation Weigh in Favor of Settlement

The Action settled at a relatively early point in the litigation when significant additional resources would have been necessary to continue litigating the Action. Oddo Aff., ¶9. Continued litigation of the Action would be extremely complex, costly, and of substantial duration. Plaintiff's Counsel faced the very formidable task of enjoining the Merger. Indeed, if the Action was to proceed, the Parties would further engage in time consuming and expensive

discovery, including undertaking depositions of the Defendants, third parties, experts, and Plaintiff, as well as requesting, producing, and reviewing a multitude of documents related to the Merger. Based on exchanges between the Parties before the Merger closed, further litigation would most likely lead to hotly contested discovery battles. Moreover, if Plaintiff and Defendants overcame various pre-trial litigation hurdles, a trial could occupy the Court, the Parties, witnesses, and attorneys on both sides for many weeks and preparation for such a trial would take months.

Moreover, it is unlikely that further litigation would have resulted in benefits over and above those obtained as part of the Settlement. Although Plaintiff's Counsel believes that the allegations in the amended complaint are meritorious, it is sufficiently experienced and realistic enough to know that all of these factors make the continued prosecution of the Action and subsequent outcome uncertain. These risks must be taken into account when appraising the fairness of the proposed Settlement. Thus, the likely prospect of continued expensive and uncertain litigation heavily favors approval of the proposed Settlement as in the best interests of the Settlement Class.

### C. The Stage of the Proceedings, Including the Status of Discovery

Plaintiff's Counsel expended a substantial effort over a necessarily short period of time in making a thorough investigation into the facts and circumstances relevant to the allegations in the Actions. Oddo Aff., ¶5. Plaintiff's Counsel, among other things, conducted an extensive investigation into Defendants' conduct in connection with, and leading up to, the execution of the Merger Agreement by, among other things, reviewing and analyzing all relevant SEC filings, press releases, and analyst reports pertaining to NaviSite, TWC, and the Merger generally; filed the initial complaints; filed an amended complaint in this Action; prepared and sent a letter to the NaviSite Board demanding that it fully disclose certain additional material information concerning the Merger to the Company's shareholders prior to the shareholder vote on whether to approve the Merger Agreement; obtained and reviewed non-public documents from Defendants; and retained a financial consultant for purposes of evaluating the Merger and the disclosures

made to shareholders concerning the Merger. *Id.*, ¶4. The accumulation of the information discovered through the above sources permitted Plaintiff and Plaintiff's Counsel to be well informed about the strengths and weaknesses of their claims and to engage in effective settlement discussions with Defendants.

### D. The Factual and Legal Obstacles that Could Prevent Plaintiff from Prevailing on the Merits

Plaintiff faced serious obstacles and uncertainties inherent in complex class actions. Continued litigation of the Action would be extremely complex, costly, and of substantial duration. Defendants could assert affirmative defenses which would create additional hurdles for Plaintiff to surpass. For example, the Board likely would have relied upon the protections afforded by the business judgment rule, pursuant to which corporate directors are presumed by courts to have "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interest of the company." *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 906 A.2d 114, 120 (Del. 2006) (citations omitted); *see also Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) (overruled on other grounds by *Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)). The strong possibility that Defendants could have successfully argued that the Board's conduct was shielded by the protective umbrella of the business judgment rule created a very real risk that Plaintiff would not have prevailed.

Further, the Merger closed on April 21, 2011, less than three months after it was publicly announced. *Id.*, ¶19. Unless Plaintiff would have succeeded in enjoining the Merger in that short time frame, Plaintiff would have faced the undeniable challenge of "unscrambling the eggs" of a completed corporate transaction when proving Defendants' liability and harm to the Settlement Class. *Id.*; *see Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F. Supp. 717, 720 (S.D. Cal. 1996) (stating that "resolving disputed legal issues *ex ante*, prior to effected events such as the shareholders meeting that is precipitating the case at bar, is preferable to an *ex post* resolution of those issues, which may require an 'unscrambling of the eggs'"); *Laidlaw Acquisition Corp. v. Mayflower Group, Inc.*, 636 F. Supp. 1513, 1517 (S.D. Ind. 1986) (stating

"[t]he virtual impossibility of 'unscrambling the scrambled eggs,' once these parties are joined in corporate (shotgun) matrimony" in the context of determining applicable relief and remedies). In light of the benefits achieved by the Settlement under extreme time pressures and the risk of protracted litigation, the Settlement is a fair, reasonable, and adequate result for the Settlement Class.

### E. The Possible Range of Recovery and the Certainty of Damages Is Outweighed by the Immediate Value of the Disclosure Benefits

It is a fundamental tenet of corporate law that shareholders are entitled to be fully informed of all material facts concerning transactions requiring their approval. *See, e.g.*, *Stroud v. Grace*, 606 A.2d 75, 84 (Del. 1992) (explaining that it is a "well-recognized proposition that directors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the Board's control when it seeks shareholder action"). Non-material facts need not be disclosed, but once a board voluntarily makes a partial disclosure, it has "an obligation to provide the stockholders with an accurate, full, and fair characterization" of the facts relating to that partial disclosure. *Arnold*, 650 A.2d at 1280. The materiality of disclosures is assessed by how important a reasonable shareholder would consider the information in deciding how to vote. *TSC Indus. v. Northway, Inc.*, 426 U.S. 438, 439 (1976).

Because the duty of candor is "best discharged through a broad rather than a restrictive approach to disclosure," courts view the obtaining of material disclosures for shareholders in the context of extraordinary corporate transactions involving stock as a valuable non-monetary benefit. *Zirn v. VLI Corp.*, 621 A.2d 773, 780 (Del. 1993); *see In re Talley Indus., Inc. S'holders Litig.*, No. 15961, 1998 WL 191939, at *15 (Del. Ch. Apr. 13, 1998) ("[T]he terms of the settlement requiring the publication and dissemination of the supplemental disclosure provided a substantial, although nonmonetary and unquantifiable, benefit to the members of the class.").[6]

[6] As explained by the United States Supreme Court, "an increasing number of lower courts have acknowledged that a corporation may receive a 'substantial benefit' from a [stockholders' action]" and that "regardless of the relief granted, private stockholders' actions of this sort 'involve corporate therapeutics,' and furnish a benefit to all shareholders by providing an important means

Indeed, disclosure benefits obtained as part of a settlement have routinely provided the basis for the resolution of shareholders' claims. *See Tandycrafts, Inc. v. Initio Partners*, 562 A.2d 1162, 1165 (Del. 1989) (approving settlement consisting of a "heightened level of corporate disclosure"); *In re Nat'l City Corp. S'holders Litig.*, No. 4123-CC, 2009 WL 2425389, at *1 (Del. Ch. July 31, 2009) (same); *Augenbaum v. Forman*, No. 1569-N, 2006 WL 1716916, at *1 (Del. Ch. June 21, 2006) (same); *In re Golden State Bancorp S'holders Litig.*, No. 16175, 2000 WL 62964, at *2 (Del. Ch. Jan. 7, 2000) (same); *In re Countrywide S'holders Litig.*, No. 3464-VCN, 2009 WL 2902476, at *1 (Del. Ch. Aug. 28, 2009) (same).

Without a doubt, full and accurate disclosure was important here, as the shareholders of NaviSite had to decide whether to accept the $5.50 per share in cash they were being offered for their NaviSite shares, or reject it in favor of NaviSite continuing in business as an independent company. As a result of the pendency, prosecution, and settlement of the Action and the efforts of Plaintiff and his counsel, NaviSite stockholders received information material to the decision confronting them. The Supplemental Disclosures supplied the Settlement Class with an immediate benefit in the face of certain litigation risk, and obviated the need for the uphill battle Plaintiff faced in obtaining an order enjoining a transaction valued at approximately $230 million. The value of this immediate benefit provides further support in favor of final approval of the Settlement.

### F. The Opinions of Plaintiff's Counsel and Absent Members of the Settlement Class Support Approval

Courts recognize that the opinion of experienced counsel who litigated the case and negotiated the settlement is entitled to considerable weight. *See, e.g.*, *Bussie*, 50 F. Supp. 2d at 77 ("[t]he Court's fairness determination also reflects the weight it has placed on the judgment of the parties' respective counsel, who are experienced attorneys and have represented to the Court that they believe the settlement provides to the Class relief that is fair, reasonable and

---

of enforcement of the proxy statute." *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 395-96 (1970) (citations omitted).

adequate."). Here, Plaintiff's Counsel has extensive experience in complex litigation and particularly, stockholder lawsuits involving corporate transactions. *See* Oddo Aff., ¶18 & Ex. A. Based on its experience and after a complete evaluation of the information obtained through its own independent investigation and the discovery provided by Defendants, Plaintiff's Counsel believes that the Settlement is a beneficial result for the Settlement Class and should be finally approved. *Id.*, ¶35.

Moreover, there were no objections to the Settlement. *Id.*, ¶23. This implicit support from NaviSite shareholders deserves substantial weight by the Court. In this age of increased shareholder activism, the fact that not one NaviSite shareholder has objected to the Settlement further supports the conclusion that it is fair, reasonable, and adequate and should be approved by this Court. *See In re Relafen Antitrust Litig.*, 231 F.R.D. 52, 58 (D. Mass. 2005) ("The lack of significant opposition may mean that the settlement meets the requirements of fairness, reasonableness, and adequacy.").

## VI. CLASS CERTIFICATION FOR PURPOSES OF SETTLEMENT IS PROPER

### A. The Proposed Class Satisfies the Prerequisites of Federal Rule of Civil Procedure 23

Plaintiff requests certification of a non-opt-out class pursuant to Rule 23 of the Federal Rules of Civil Procedure. The Class should be certified for purposes of settlement if Plaintiff establishes that his respective claims satisfy the four prerequisites commonly referred to as: numerosity, commonality, typicality, and adequacy of representation. *See* Fed. R. Civ. P. 23(a). Additionally, Plaintiff must show that the proposed Settlement Class falls within one or more of the subsections of Rule 23(b) of Federal Rules of Civil Procedure. The proposed Class in this case easily satisfies each of these prerequisites and, thus, should be preliminarily certified.

#### 1. An Ascertainable Class Exists and Is So Numerous that Joinder Is Impracticable

The first requirement for a class action is that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is little question that the number of class members and their various geographic locations greatly exceeds the threshold for a

presumption of impracticality of joinder. *See* 1 Alba Conte & Herbert B. Newberg, *Newberg on Class Action* §3:5 (4th ed. 2002) ("In light of prevailing precedent, the difficulty inherent in joining as few as 40 class members should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). According to NaviSite's SEC filings, there were more than 30 million shares of NaviSite common stock outstanding at the time of the Merger. The proposed Class is therefore so numerous that joinder is impracticable.

**2. Common Questions of Law and Fact Exist and Predominate**

Federal Rule of Civil Procedure 23 requires that "questions of law or fact common to the class" be substantially similar and "predominate over any questions affecting [the] individual members." Fed. R. Civ. P. 23(a)(2), (b)(3). There are many common issues of law and fact in the Action, including whether Defendants breached the fiduciary duties owed to Class Members and whether Class Members were provided with adequate disclosure in connection with recommending they vote in favor of the Merger. These facts give rise to legal issues common to all Class Members.

**3. Plaintiff's Claims Are Typical of the Class' Claims**

Federal Rule of Civil Procedure 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The rationale for this prerequisite is that a plaintiff with claims typical to the class will advance the interest of the other class members by pursuing the litigation. Conte & Newberg, *supra*, §3:13. Here, Plaintiff's claims are based on the same legal theories and involve the same set of facts as those of the Class Members. Plaintiff brought the Action alleging that the sale process NaviSite undertook was improper and that the Company had made inadequate disclosures in connection with the Merger. Those claims are precisely the same as those of the Class they seek to represent. Plaintiff, like all members of the Class, faced the same injuries from Defendants' alleged misconduct in connection with the sale of NaviSite and their attempts to solicit shareholder approval of the Merger. Thus, Plaintiff's claims are typical of Class Members.

### 4. Plaintiff Will Fairly and Adequately Represent the Class

Federal Rule of Civil Procedure 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The two relevant factors in determining whether the class representatives will adequately represent the class are whether the representatives, through their attorneys, will vigorously prosecute the class claims and whether the interests of the class representatives are seriously antagonistic to the interest of the other class members.

Plaintiff easily satisfies both prongs of the "adequacy" test here. The first prong is satisfied because Plaintiff has retained counsel with extensive experience in the area of shareholder litigation. Plaintiff's Counsel has successfully prosecuted numerous such class actions and other complex actions on behalf of injured investors across the country. Based upon Plaintiff's Counsel's extensive experience and expertise in litigating cases similar to the Action, there can be no legitimate dispute that Plaintiff's Counsel is capable of prosecuting this Action. The second requirement is also satisfied here because there is no antagonism between Plaintiff and the absent Class Members. Here, Plaintiff has the same claims as each member of the Class he seeks to represent and seeks the same recovery. Accordingly, Plaintiff does not have a fundamental conflict of interest with the Class and can fairly and adequately protect the interests of the Class.

## B. Certification of a Non-Opt-Out Class Is Appropriate Pursuant to Federal Rule of Civil Procedure 23

In addition to satisfaction of the prerequisites of Federal Rule of Civil Procedure 23, when at least one of the three requirements of Federal Rule of Civil Procedure 23(b) is met, a non-opt-out class action is appropriate. Fed. R. Civ. P. 23(b). Here, Plaintiff's claims are based on the same facts, legal theories, and applicable law as those of the Class – for example, whether fiduciary duties were violated under Delaware law – NaviSite's state of incorporation. Plaintiff's class claims were predominantly for injunctive and other equitable relief based upon, *inter alia*, allegations that the Defendants breached their fiduciary duties to NaviSite shareholders in connection with the Merger by causing NaviSite to issue a misleading proxy statement and other

communications in attempts to solicit shareholder approval of the Merger. The remedy obtained on behalf of the Class – the dissemination of the Supplemental Disclosures – is entirely equitable in nature. Under identical circumstances, courts have held that approval of a settlement certifying a non-opt-out class is appropriate. *See In re. Wm. Wrigley Jr. Co. S'holders Litig.*, No. 3750-VCL, 2009 WL 154380, at *4 (Del. Ch. Jan. 22, 2009) (stating a class action for injunctive relief and for additional disclosures is suitable for certification as a non-opt-out class); *Nottingham Partners*, 564 A.2d at 1097-1101 (affirming Delaware Court of Chancery's certification of class action under (b)(2) and refusing party opposing settlement the right to opt-out). In sum, the Class satisfies the requirements of Federal Rule of Civil Procedure 23(b)(2) for certification of a non-opt-out class and should be preliminarily certified for purposes of effectuating the proposed Settlement.

## VII. THE NEGOTIATED ATTORNEYS' FEES AND EXPENSES ARE FAIR AND REASONABLE AND SHOULD BE APPROVED

### A. Negotiated Attorneys' Fees Are Favored by Courts

Defendants have agreed that NaviSite (or any successor entity) will cause to be paid to counsel for the Plaintiffs the sum of $360,000 for Plaintiff's attorneys' fees and expenses (the "Fee Amount"). *See* Stipulation, ¶12. The amount that Defendants have agreed to pay is based on, among other things: (i) the results obtained and benefits achieved in advance of the expiration of the Merger; (ii) the character of the work performed including the difficulty, the time, and skill required, and the prosecution of Plaintiff's claims on a fully contingent fee basis; and (iii) the quality of the services of Plaintiff's Counsel, as well as the work performed in pursuing and resolving the complex factual and financial issues, and legal and equitable claims alleged by Plaintiff, including the investigation and analysis of the underlying facts and successful negotiations with Defendants and their financial and legal advisors.

Where the parties in a representative action have negotiated and reached agreement on a fee, courts give great weight to the agreement reached by the parties. *See M. Berenson*, 671 F. Supp. at 829 ("Whether a defendant is required by statute or agrees as part of the settlement of a

class action to pay the plaintiff's attorneys' fees, ideally the parties will settle the amount of the fee between themselves."). An agreement on the parameters of fees and expenses is particularly appropriate in cases like this one, where the dollar value of the benefits might be difficult to precisely quantify. *In re AXA Fin., Inc. S'holders Litig.*, No. 18268, 2002 WL 1283674, at *7 (Del. Ch. May 22, 2002) ("Where … the fee is negotiated after the parties have reached an agreement in principle on settlement terms and is paid in addition to the benefit to be realized by the class, this court will also give weight to the agreement reached by the parties in relation to fees."). Consistent with the foregoing precedents, the Parties negotiated the amount of fees and expenses Defendants will pay to counsel for the Plaintiffs for their work on behalf of the Settlement Class. The result is an amount that reflects a compromise reached through arm's-length bargaining by informed parties.

### B. The Substantial Benefits Conferred on the Settlement Class Strongly Support the Fee Amount

Courts throughout the United States focus on the benefits achieved in the litigation as the primary factor in evaluating attorneys' fees. *See, e.g.*, *Hall v. Cole*, 412 U.S. 1, 5 (1973) (the payment of attorneys' fees is appropriate where Plaintiff's litigation results in a "'substantial benefit [for] members of an ascertainable class'"). Courts have consistently placed a significant value upon non-monetary benefits obtained for shareholders, such as the enhanced disclosures here, particularly in the context of a corporate transaction involving the sale or exchange of the shareholders' stock. *See, e.g.*, *TSC Indus.*, 426 U.S. 438 (recognizing the importance of providing shareholders with all material information in order to promote the free exercise of the voting rights of stockholders); *Mills*, 396 U.S. at 396 (noting importance of fair and informed shareholder voting). Courts have consistently recognized the value of non-monetary benefits in the context of corporate transactions like the instant case. *See, e.g.*, *Tandycrafts*, 562 A.2d at 1165 ("the benefit need not be measurable in economic terms").

Here, as a result of the prosecution and settlement of the Action, Plaintiff's Counsel obtained significant disclosures that Plaintiff believes enabled NaviSite shareholders to make an

informed decision on the Merger. Stipulation at 6, 13. There can be no question that the Supplemental Disclosures achieved as a result of the Settlement provided substantial benefits to NaviSite shareholders. Accordingly, Plaintiff's Counsel respectfully submits that the Fee Amount is fair and reasonable and should be approved.

### C. Attorneys' Fees in Similar Cases Support the Fee Amount

During negotiations over an appropriate amount for Plaintiffs' attorneys' fees and expenses, both sides were aware of the range of fees and expenses paid in other similar actions. The following cases establish the value provided by Plaintiff's counsel in pursuing and obtaining non-monetary relief in actions involving alleged corporate wrongdoing and fully support the fees and expenses requested here. *See, e.g.*, *Countrywide*, 2009 WL 2902476, at *1 (approving $750,000 in fees and expenses for additional disclosures); *Moore v. Brown*, No. 6:04-cv-77, slip op. (E.D. Tex Mar. 10, 2008) (approving $500,000 in fees and expenses for additional disclosures), Oddo Aff., Ex. B; *Golden State*, 2000 WL 62964, at *2 (approving $500,000 in fees and expenses for additional disclosures); *Nat'l City,* 2009 WL 2425389, at *1 (approving $400,000 in fees and expenses for additional disclosures); *Talley*, 1998 WL 191939 (approving $330,000 in fees and expenses for additional disclosures); *Augenbaum*, 2006 WL 1716916, at *1 (approving $225,000 in fees and expenses for additional disclosures). For the foregoing reasons, the Fee Amount is both fair and reasonable and should be approved.

## VIII. CONCLUSION

For the above reasons, Plaintiff therefore respectfully requests the Court to enter the proposed Order and Final Judgment submitted herewith.

Dated: September 2, 2011

Respectfully submitted,

PARTRIDGE, ANKNER &
HORSTMANN, LLP
TERENCE K. ANKNER

/s/ Terence K. Ankner
TERENCE K. ANKNER

BBO No. 556377
The Berkeley Building
200 Berkeley Street, 16th Floor
Boston, MA 02116
Telephone: (617) 859-9999
Facsimile: (617) 859-9998

ROBBINS UMEDA LLP
MARC M. UMEDA
STEPHEN J. ODDO
ARSHAN AMIRI
JUSTIN D. RIEGER
600 B Street, Suite 1900
San Diego, CA 92101
Telephone: (619) 525-3990
Facsimile : (619) 525-3991

Attorneys for Plaintiff

**LOCAL RULE 7.1 CERTIFICATION**

I, Terence K. Ankner, hereby certify that, in compliance with Local Rule 7.1(a)(2), Plaintiff's Counsel conferred with counsel for Defendants regarding the filing of this motion, and counsel for Defendants do not oppose the relief sought by this motion.

/s/ Terence K. Ankner, Esq.
TERENCE K. ANKNER

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was filed with this Court on September 2, 2011, through the CM/ECF system and will be sent electronically to all registered participants as identified on the Notice of Electronic Filing, and paper copies will be sent to those indicated as non-registered participants.

/s/ Terence K. Ankner, Esq.
TERENCE K. ANKNER

645637